**CARLEN REALTY COMPANY,**
Appellant,

v.

**Laurie W. TOMLINSON, District Director, I.R., Appellee.**

No. 21875.

United States Court of Appeals
Fifth Circuit.

May 18, 1965.

---

4. For a collection of cases citing § 90 with approval, see footnote 65, Corbin on Contracts, 1A, p. 250.

Michel G. Emmanuel, Norman H. Lipoff, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, Fla., for appellant.

Jeanine Jacobs, Atty., Dept. of Justice, Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Attys., Dept. of Justice, Washington, D. C., Edward F. Boardman, U. S. Atty., Tampa, Fla., Thomas J. Hanlon, III, Asst. U. S. Atty., of counsel, for appellee.

Before TUTTLE, Chief Judge, and PHILLIPS * and WISDOM, Circuit Judges.

TUTTLE, Chief Judge:

This is an appeal from a decision of the district court upholding the Commissioner's determination of deficiencies for 1958 and 1959 of $18,359.90 and $24,361.43 respectively. These deficiencies arose out of the Commissioner's imposition of accumulated earnings surtaxes for the years in question on the grounds that the taxpayer was "availed of for the purpose of avoiding the income tax with respect to its shareholders * * * by permitting earnings and profits to accumulate instead of being divided or distributed." I.R.C.1954, § 532.

The taxpayer was incorporated in 1950 by A. L. Ellis, his wife, and a third party. During the years in question, its assets consisted primarily of bank stocks, listed securities, and real estate holdings. The taxpayer had no office, no telephone listings, and no salaried employees in 1958 and 1959. Its president, A. L. Ellis, used his office as President of the First National Bank in Tarpon Springs, Florida, as the office of the taxpayer.

■■ It is, of course, apparent that § 532 as well as § 537, which, in effect, permits an accumulation which may be necessary for the "reasonably anticipated needs of the business," requires the ascertainment of a taxpayer's "purpose" and of "reasonably anticipated needs", both issues of fact. To the extent that the trial court's determination of these issues is supported by the record, they "are entitled to affirmance under the clearly erroneous rule". Motor

---

* Senior Circuit Judge of the Tenth Circuit, sitting by designation.

**1000**

Fuel Carriers, Inc. v. United States, 5 Cir., 322 F.2d 576. Here we find no error in the court's application of the basic legal principles and we conclude that the facts found are amply supported by the record. We therefore affirm the judgment of the trial court.

After setting forth the assets side of the taxpayer's balance sheets for 1958 and 1959, the trial court made the following specific findings as to the taxpayer's financial condition:

"16. In 1958 the taxpayer received $55,780.89 in dividends and $66,281.35 in rents, and in 1959 it received $74,539.18 in dividends and $87,404.43 in rents.

"17. Although the taxpayer managed and collected rents on some of its properties, it hired management companies and brokers to manage and collect the rents on other properties. In 1958 it paid $2,460.05 in commissions and paid $2,434.38 in commissions in 1959.

"18. That during the years 1950 to 1959, inclusive, the taxpayer did not declare any dividends. The earned surplus at the end of 1957 was $138,189.23; at the end of 1958 it was $194,578.86; and at the end of 1959 it was $265,701.83.

"19. That in the year 1958, for every dollar of current liabilities the taxpayer had $3.65 of current assets and, for the year 1959, the taxpayer had $3.35 of current assets for every dollar of current liabilities."

None of these facts are disputed.

In light of the above findings and the additional finding "That the taxpayer in 1958 and 1959 had no specific or definite plans requiring the use of the substantial accumulated funds in the business," the court concluded:

"20. That the taxpayer in 1958 and 1959 had more than enough current income to satisfy its liabilities, including its mortgage payments, as they became due.

\*  \*  \*  \*  \*  \*

"22. That none of the earnings and profits which were accumulated in 1958 and 1959 were accumulated for the reasonable needs of the business.

"23. That by permitting earnings and profits to be accumulated instead of being distributed as dividends the taxpayer was being used by A. L. Ellis to avoid increasing his own personal income tax liabilities."

The appellant attacks the decision of the trial court on three fronts. First, it claims that it was not "availed of" for the purpose of avoiding its stockholder's income tax as prohibited under § 532,[1] because it says that its accumulated earnings and profits were entirely reasonable and prudent considering the current needs of the business. Second, it seeks to support the accumulation in light of the "reasonably anticipated needs of the business", which, under § 537, are to be considered as a part of the definition of "the reasonable needs of the business" the language used in § 533(a).[2] Finally, taxpayer contends

---

1. "§ 532. Corporations Subject to Accumulated Earnings Tax

"(a) General Rule.—The accumulated earnings tax imposed by section 531 shall apply to every corporation \* \* \* formed or availed of for the purpose of avoiding the income tax with respect to its shareholders or the shareholders of any other corporation, by permitting earnings and profits to accumulate instead of being divided or distributed." 26 U.S.C.A. § 532.

"§ 533. Evidence of purpose to avoid income tax

"(a) Unreasonable accumulation determinative of purpose. For purposes of

section 532, the fact that the earnings and profits of a corporation are permitted to accumulate beyond the reasonable needs of a business shall be determinative of the purpose to avoid the income tax with respect to shareholders, unless the corporation by the preponderance of the evidence shall prove to the contrary." 26 U.S.C.A. § 533.

2. "§ 537. Reasonable Needs of the Business

"For purposes of this part, the term 'reasonable needs of the business' includes the reasonably anticipated needs of the business." 26 U.S.C.A. § 537.

that, even if the accumulations were unreasonable, or even if the current or reasonably anticipated needs of the business did not warrant the retention of the surplus, the corporation was not "availed of" for the purpose of avoiding Ellis' income tax.

On the first point, the taxpayer's principal argument is that, in the two years in question, its total outstanding indebtedness always exceeded its accumulated earned surplus. This is not disputed, but the Government responds that the matching of earned surplus to "total indebtedness" is not sound accounting. It contends that the proper comparison is between current assets and current liabilities. The record here discloses that in 1958, the taxpayer's current assets were 3.65 times its current liabilities, and in 1959 they were 3.35 times current liabilities. The Government points out that the nature of the taxpayer's income, i. e. from rents and dividends, gives it a stability that would require even a smaller ratio of current assets to current liabilities than would be appropriate in a different type of manufacturing or business enterprise and it is clear that such income here far exceeded the fixed payments required on the outstanding mortgages during the years in question. We do not need to adopt any general theory or announce any general accounting practice as a legal principle that is applicable in all situations. cf. Motor Fuel Carriers, Inc. v. C.I.R., supra, at p. 579. The duty to analyze the evidence before it and to draw the inference that the fact-finder must always make with respect to reasonable needs and with respect to purpose and intent is primarily for the trial court. The determination made here is amply supported by the record and cannot be set aside.

What has just been said with respect to the current needs applies equally with respect to the "reasonably anticipated needs of the business". The taxpayer has not met the burden of showing that the trial court's determination was clearly erroneous with respect to this phase of the case merely by showing that there was an unarticulated plan or desire on the part of the taxpayer in 1958 and 1959 to purchase large shopping centers in the future. The trial court concluded that "the taxpayer in 1958 and 1959 had no specific or definite plans requiring the use of the substantial accumulated funds in the business." The evidence showed no more definite or specific plan than the one this court discussed in Motor Fuel Carriers, Inc. v. United States, supra, where at 322 F.2d, 576 we said that "[t]here is ample evidence to support the district court's findings and we are in agreement with its determination that there was no specific or definite plan in existence during the tax years here involved."

So, too, must we deal with the trial court's determination of the "anticipated need" which the taxpayer sought to show with respect to the prospect of its being called upon to contribute additional capital to the First National Bank in Tarpon Springs, of which it held 85% of the stock. Likewise, with respect to appellant's effort to raise the specter of being called upon by the Federal Reserve Board to maintain a substantial reserve in support of that bank because of taxpayer's status as a holding company affiliate. There was ample evidence before the trial court to show that the Tarpon Springs bank was in sound financial condition and that any apprehension that the taxpayer might be called on to furnish additional capital to it was purely speculative, as was the suggestion that there might be sufficient change in the Federal Reserve Board's requirements with respect to requiring the taxpayer to maintain a holding company affiliate reserve.

■ Finally, the taxpayer's failure to prove that the accumulated earnings and profits of 1958 and 1959 were reasonable within the contemplation of the Act requires the conclusion that taxpayer was availed of for the purpose of avoiding Ellis's income taxes under § 533, supra footnote 1. This follows because the taxpayer put forth no grounds to show that

**1002**

it was not improperly availed of other than its efforts to show that its accumulations were reasonable.

The judgment of the trial court is affirmed.